**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **JAMES MORRISON and DALLAS MORRISON, individually and on behalf of others similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 4:23-cv-324** **JURY DEMAND** |
| **v.** | ) ) | |
| **SPINNAKER INSURANCE COMPANY,** | ) ) | |
| **Defendant.** | ) | |

**CLASS ACTION COMPLAINT**

COMES NOW Plaintiffs James Morrison and Dallas Morrison (collectively "Plaintiffs"), individually and on behalf of others similarly situated, for their Class Action Complaint against Defendant Spinnaker Insurance Company ("Defendant" or "Spinnaker"), states and alleges the following:

**OVERVIEW OF CLAIMS**

1.      This is a class action case arising out of a dispute between policyholders and their property insurer, Spinnaker. The seminal legal dispute before the Court is whether future labor, yet to be incurred, may be "depreciated" by Spinnaker when Spinnaker calculates its actual cash value ("ACV") payment obligations for structural property losses.

2.      This lawsuit does not contest that labor used to make a building product (such as a shingle or electrical outlet) become "embedded" within the building product or home and can be depreciated as part of an ACV calculation.

3.      Future labor is at issue because, pursuant to Spinnaker's property insurance policy forms at issue, ACV payments are to be made prospectively, that is, prior to the policyholder

undertaking repairs to a damaged structure. In contrast to ACV coverage, replacement cost value coverage payments ("RCV") are made retrospectively, after repairs have been completed.

4.     Most property insurers in Texas do not withhold future labor under the auspice of "depreciation" when making ACV payments for structural loss claims. However, some property insurers in Texas do withhold future labor as depreciation when making ACV payments for structural loss claims but only pursuant to the terms of their insurance policies, which expressly permit future labor to be withheld—*i.e.*, a form that expressly uses the terms "labor" and "depreciate" or "depreciation" and addressing the issue within the text of the policy or endorsement. Others, such as Spinnaker, withhold future labor as depreciation even under policies that do not contain such provisions. Spinnaker's policies at issue did not include any provision or language that allow it to withhold labor as depreciation when making ACV payments for structural loss claims.

5.     The issue presented is a question of law (whether labor may be depreciated in the absence of a labor depreciation permissive form) and was recently addressed by the Fifth Circuit Court of Appeals in *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700 (5th Cir. 2020) (interpreting Mississippi law); as well as by U.S. District Court for the Western District of Texas in *Sims v. Allstate Fire & Cas. Co. et al.*, No. SA-22-CV-00580-JKP, 2023 WL 175006, at *4 (W.D. Tex. Jan. 11, 2023) (applying Texas law) and *Cortinas et al. v. Liberty Mutual Personal Ins. Co., et al.*, No. SA:22-CV-00544-OLG, Dkt. 37 (W.D. Tex. March 14, 2023) (applying Texas law).

6.     In *Mitchell*, the Firth Circuit held that both the insurer and insured's interpretations of the otherwise undefined phrase "actual cash value" were reasonable, thus the policy was ambiguous and must be construed in favor of the insured. *Id.* at 703, 707.

7.     The Fifth Circuit's holding in *Mitchell* is dispositive because Texas law and Mississippi law are the same as it relates to all of the contractual interpretation issues before the Court. *Sims*, 2023 WL 175006, at *4 ("The Fifth Circuit's holding in Mitchell is dispositive because Texas law and Mississippi law are the same with regard to contractual interpretation and are substantially similar with regard to the definition and interpretation of 'actual cash value.'"). The chart below compares the consistency between the two States:

| __Issue__ | __*Mitchell v. State Farm*__ __(Mississippi)__ | __Case Before the Court__ __(Texas)__ |
|---|---|---|
| Determination of whether an insurance policy term is ambiguous | Under Mississippi law, if the ordinary meaning of a subject term is susceptible to more than one reasonable interpretation, the term shall be considered ambiguous and construed in favor of the insured. *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700, 705-06 (5th Cir. 2020). | "As shown in *Mitchell*, under Mississippi law as in Texas, if the ordinary meaning of a subject term is susceptible to more than one reasonable interpretation, the term shall be considered ambiguous and construed in favor of the insured." *Sims v. Allstate Fire & Cas. Co. et al.*, No. SA-22-CV-00580-JKP, 2023 WL 175006, at *4 (W.D. Tex. Jan. 11, 2023). |
| Interpretation of ambiguous provisions within insurance policies | Under Mississippi law, "ambiguity and doubt in an insurance policy must be resolved in favor of the insured." *Mitchell*, 954 F.3d at 705 (citing *Bellefonte Ins. Co. v. Griffin*, 358 So. 2d 387, 390 (Miss. 1978)). | Under Texas law, when an insurance policy is ambiguous, courts "must resolve the uncertainty by adopting the construction that most favors the insured." *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citations omitted). |
| When a policy provision is ambiguous | "[W]e need only determine whether [the insured's] interpretation is a reasonable one—not necessarily the most reasonable. *Mitchell*, 954 F.3d at 706 (citing *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So. 2d 1371, 1372 (Miss. 1981)). | If both the insured and insurer "present reasonable interpretations of the policy's language, we must conclude that the policy is ambiguous." Uncertainty must be resolved in favor of the insured "even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citations omitted). |

8.      This lawsuit seeks to remedy the improper withholdings of future labor from Plaintiff's and putative class members' ACV payments.

## PARTIES, RESIDENCY, JURISDICTION AND VENUE

9.      Plaintiffs James Morrison and Dallas Morrison are citizens and residents of Fort Worth, Texas. At all times relevant hereto, Plaintiffs owned the dwelling and other structures located at 746 Swindle Road, Howe, Texas 75459 (the "Insured Property").

10.     Defendant Spinnaker Insurance Company is organized under the laws of the State of Illinois with its principal place of business in Bedminster, New Jersey. Spinnaker is authorized to sell property insurance policies in the State of Texas, including within this judicial district.

11.     Spinnaker engaged in the contractual breaches described herein in a uniform matter and pursuant to a uniform policy.

12.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring contractual and declaratory relief claims on behalf of themselves and a putative class of Spinnaker's property insurance policyholders who are similarly situated.

13.     The events giving rise to the individual claims asserted by Plaintiffs that are the subject of this action occurred in the Eastern District of Texas. Spinnaker has insurance agents in the Eastern District of Texas for the conduct of its usual and customary business, including the sale and servicing of property insurance policies and the handling and payment of claims associated with those policies of insurance.

14.     Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). There are more than 100 members in the proposed class and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15.     This Court has personal jurisdiction over Spinnaker because it has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of Texas.

**FACTS**

A.     **Introduction and Scope of Lawsuit**

16.     Spinnaker sells property insurance coverage for, *inter alia*, homes and buildings in Texas.

17.     This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

18.     Further, this lawsuit only concerns claims wherein Spinnaker itself accepted coverage and then Spinnaker chose to calculate its ACV payment obligations exclusively pursuant to the replacement cost less depreciation ("RCLD") methodology.

B.     **Plaintiffs' Insurance Policy and Loss**

19.     Plaintiffs contracted with Spinnaker for an insurance policy providing coverage for certain losses to the Insured Property. The policy number was HTX-0210823-02 (the "Policy").

20.     Plaintiffs paid Spinnaker premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

21.     On or about April 28, 2021, the Insured Property suffered damage covered by the Policy. The damage to the Insured Property required replacement and/or repair.

22.     Plaintiffs timely submitted a claim to Spinnaker requesting payment for the covered loss.

23.     Spinnaker determined the loss to the Insured Property was covered by the terms of the Policy.

24.     Spinnaker calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or RCV), and then Spinnaker subtracts the estimated depreciation.

25.     The Policy, and the other property forms at issue in this pleading, do not permit the withholding of labor as depreciation as described below. In contrast with Plaintiffs' Policy, certain policies of insurance expressly allow for the depreciation of "labor" as described herein. The type of form or endorsement will be referred to herein as a "labor depreciation permissive form."

26.     Plaintiffs' Policy does not contain a labor depreciation permissive form.

**C.     Spinnaker's Calculation of Plaintiffs' ACV Payment**

27.     In adjusting Plaintiffs' claim, Spinnaker affirmatively and unilaterally chose to use a RCLD methodology to calculate Plaintiffs' losses and to make Plaintiffs' ACV payment. Spinnaker did not use any other methodology to calculate Plaintiffs' ACV payment. The Policy, itself, adopts the RCLD method for determining ACV.

28.     Spinnaker did not calculate any portion of Plaintiffs' losses by reference to or analysis of any alleged increase or decrease in the market value of their home, or the market value of any portion of their property.

29.     Spinnaker did not conduct an appraisal of Plaintiffs' loss.

30.     Spinnaker did not conduct an appraisal of Plaintiffs' property.

31.     Spinnaker has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the RCLD methodology.

32.     Soon after Plaintiffs' loss, Spinnaker sent an adjuster to inspect the damage and estimate ACV.

33.     Spinnaker used commercially available computer software to estimate Plaintiffs' RCV, depreciation, and ACV calculations. The software used to calculate the payment to Plaintiffs is called Xactimate®.

34.     As set forth in the written Xactimate® estimate provided to Plaintiffs, Spinnaker determined that Plaintiffs had suffered covered losses to their property. The Xactimate® estimate generated by Spinnaker included the estimated cost of materials and future labor required to complete the repairs (the RCV).

35.      In calculating its ACV payment obligations to Plaintiffs, Spinnaker utilized Xactimate® to determine the depreciation to subtract from the RCV.

36.     Plaintiffs were underpaid on their ACV claim and deprived of the use of their money from the time they should have received full ACV payments until the date they actually recovered the wrongfully withheld amounts, as more fully described below.

**D.     Spinnaker's Practice Of Withholding Future Labor As Depreciation**

37.     For Plaintiffs and putative class members, Spinnaker used Xactimate® software to calculate ACV payments. Xactimate® is used by both insurers and contractors to calculate the cost of rebuilding or repairing damaged property and is also used to calculate depreciation to determine ACV payments under the RCLD methodology.

38.     The only methodology used by Xactimate® to calculate ACV payments for structural damage is the RCLD methodology. Xactimate® does not use any other methodology to calculate ACV, such as, e.g., the calculation of ACV through a fair market value as determined by a real estate appraisal.

39.     Because Xactimate® does not use any methodology to calculate ACV other than "replacement cost less depreciation," a property insurer only makes an ACV payment through

Xactimate® after the property insurer itself has affirmatively determined and agreed to use the RCLD methodology.

40.     Spinnaker unfairly manipulates Xactimate® to withhold future labor from ACV payments.

41.     Xactimate® generates its estimate prices from its ongoing fair market pricing research. Its price lists are both temporal (*e.g.*, monthly) and geographic (*e.g.*, city or region).

42.     When adjusting property insurance claims with Xactimate®, the adjuster inputs, among other information, the dimensions of the damaged property, the damaged portion of the damaged property, and other objective information such as the age of the roofing, siding, or other damaged building materials.

43.     The Xactimate® software then breaks down each individual necessary step in the repair process into an individual "line item." Each line item has a specific dollar value. The line items are totaled to obtain the RCV values, and then depreciation is applied.

44.     Xactimate® can be manipulated to withhold labor from ACV payments by simply checking or unchecking certain boxes concerning depreciation. For example, the below screenshot from the Xactimate® program allows the software user to select or de-select "Depreciate Non-Material," "Depreciate Removal" or "Depreciate Overhead and Profit," all of which are labor items, and all of which will result in the withholding of labor from an ACV payment.



45.     When Spinnaker calculated Plaintiffs' ACV benefits owed, Spinnaker withheld costs for both the materials and future labor required to repair Plaintiffs' property as depreciation, even though labor does not depreciate in value over time. Spinnaker withheld labor costs as depreciation throughout its ACV calculations as depreciation.

46.     In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as removal costs to remove damaged property, under commercial claims estimating software.

47.     Spinnaker's withholding of future labor costs as depreciation resulted in Plaintiffs receiving payment in an amount less than what they were entitled to receive under their Policy. Spinnaker breached its obligations under Plaintiffs' Policy by improperly withholding the future cost of labor as depreciation.

48.     Without expert assistance, Plaintiffs themselves cannot determine the precise amount of labor that has been withheld based only upon the written estimate provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue (Xactimate®), as well as the electronic file associated with the respective estimate.

49.     While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold labor as depreciation under the policy forms at issue when the carrier chooses to use a RCLD methodology.

50.     Spinnaker's failure to pay the full cost of the labor necessary to return Plaintiffs' structures to the *status quo ante* left Plaintiffs under-indemnified and underpaid for their losses.

51.     Future labor which has not yet been incurred, by its nature, does not depreciate, and an insurer therefore may not withhold future labor as depreciation.

52.     Spinnaker materially breached its duty to indemnify Plaintiffs by withholding future labor costs from ACV payments as depreciation, thereby paying Plaintiffs less than they were entitled to receive, including but not limited to depriving Plaintiffs of the time use of money resulting from the periods of labor withholding in the form of prejudgment interest.

## AMOUNT IN CONTROVERSY

53.     Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

54.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

55.     The proposed class that Plaintiffs seek to represent is tentatively defined as follows:

All Spinnaker Insurance Company policyholders (or its lawful assignees) who made:

(1) a structural damage claim for property located in Texas; and

(2) for which Spinnaker accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and

(3) which resulted in an actual cash value payment during the class period from which "non-material depreciation" was withheld from the policyholder; or which would have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.

The class period for the proposed class is the maximum time period as allowed by applicable law.

The class excludes any claims for which the applicable limits of insurance was exhausted by the initial actual cash value payment. The class also excludes any claims arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form.

56.     Plaintiffs reserve the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Spinnaker and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

57.     Plaintiffs and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

58.     The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe hundreds or thousands of people geographically dispersed across Texas have been damaged by Spinnaker's actions. The names and addresses of

the members of the proposed class are readily identifiable through records maintained by Spinnaker or from information readily available to Spinnaker.

59.     The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

60.     Spinnaker has acted on grounds generally applicable to the proposed class in that Spinnaker has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect Spinnaker will continue to withhold labor to reduce the amount they pay to its insureds under these policies absent this lawsuit.

61.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a.     Whether the applicable policy language allows the withholding of future labor costs in the calculation of ACV payments under the RCLD methodology;

b.     Whether applicable policy language is ambiguous concerning the withholding of future labor costs in calculating ACV payments, and if so, how the insurance policies should be interpreted;

c.     Whether the withholding of future labor costs in the calculation of ACV payments breaches the applicable insurance policies;

d.     Whether Spinnaker has a custom and practice of withholding future labor costs in the calculation of ACV payments;

e.     Whether Spinnaker and members of the proposed class have been damaged as a result of the withholding of future labor costs in the calculation of ACV payments; and

f.      Whether Spinnaker and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

62.     Plaintiffs' claims are typical of the claims of the proposed class members, as she is similarly affected by the customs and practices alleged herein. Further, Plaintiffs' claims are typical of the claims of the proposed class members because the claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

63.      Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiffs reserve the right to have unnamed class members join them in seeking to be a class representative.

64.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the

resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

65.     In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

66.     Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by the unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

67.     Class certification is further warranted because Spinnaker has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

68.     Plaintiffs may seek, in the alternative, certification of issues classes. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

69.     Prior to instituting this action, Spinnaker was provided notice, on behalf of Plaintiffs and the putative class, of the intent to pursue the claims herein against Spinnaker. Notice was so given by letters dated August 10, 2022 and February 6, 2023.

## INDIVIDUAL ALLEGATIONS
## (INDEPENDENT OF NON-MATERIAL DEPRECIATION)

70.     Plaintiffs requested that Spinnaker cover the cost of repairs to the Insured Property, pursuant to the Policy.

71.     Spinnaker inspected the property and did not issue a full and prompt payment to Plaintiffs for the damages.  Spinnaker, on multiple occasions, failed to properly inspect the Insured Property and failed to properly scope the loss by intentionally ignoring areas of damage and turning a blind eye to the true extent of the loss.

72.     Spinnaker set about to deny and/or underpay on properly covered damages.  As a result of Spinnaker's unreasonable investigation of the claim, including not providing full coverage for the damages sustained by Plaintiffs, as well as under-scoping the damages during its investigation and thus denying adequate and sufficient payment to Plaintiffs to repair the Insured Property, Plaintiffs' claim was improperly adjusted.  The mishandling of Plaintiffs' claim has also caused a delay in Plaintiffs' ability to fully repair the Insured Property, which has resulted in

additional damages.  To this date, Plaintiffs have yet to receive the full payment to which they are entitled under the Policy.

73.     As detailed in the paragraphs below, Spinnaker wrongfully denied or underpaid Plaintiffs' claim for repairs of the Insured Property, even though the Policy provided coverage for losses such as those suffered by Plaintiffs. Furthermore, Spinnaker underpaid some of Plaintiffs' claims by not providing full coverage for the damages sustained by Plaintiffs, as well as under-scoping the damages during its investigation.

74.     Plaintiffs purchased the above referenced insurance policy(s) through Spinnaker. Plaintiffs relied on the experience, representations, and expertise of Spinnaker's company to provide policies which covered damage from covered losses, including the losses sustained as a result of the above referenced date of loss.

75.     Plaintiffs' Policy includes an applicable deductible of $3,950.00 for covered damages.

76.     The Insured Property suffered substantial damages from a hail/windstorm.

77.     Plaintiffs relied on Spinnaker to promptly and properly estimate the damages of any claims filed in accordance with the protections that Texas law provides for all policyholders.

78.     Due to Spinnaker's unfair claims handling, Plaintiffs were compelled to hire a Public Adjuster, Marcus Cox with Hawk Public Adjusting.  Mr. Cox conducted an inspection on or about June 4, 2021 and found substantial damage to Plaintiff's property resulting from the subject loss. The Public Adjuster prepared an estimate in the amount of $280,311.12 which is the actual damage to the Insured Property and the reasonable and necessary amount to indemnify Plaintiffs.  The Public Adjuster provided sufficient proof of loss to place Spinnaker on notice of

the reasonable and necessary amount to indemnify Plaintiffs and the full scope of the covered damage and cost of repairs.

79.      On or about June 2, 2021, Spinnaker caused an estimate to be prepared by its claims representative, Mr. Martin Jelinek, and presented it to Plaintiff and/or Plaintiff's Public Adjuster. The estimate completely underestimated the scope and cost of necessary repairs and the reasonable and necessary amount to indemnify Plaintiffs.

80.      By letter dated June 16, 2021, Spinnaker, through its adjuster, Ronald Tatum, acknowledged coverage for Plaintiffs' loss and Spinnaker issued payment in the amount of $549.38, which was wholly insufficient to indemnify Plaintiffs. Such payments are evidence of Spinnaker's unreasonable investigation and its knowing misrepresentations regarding the true value of the covered loss and the applicable coverage.

81.      Purporting to have concluded its investigation, Spinnaker stated "[w]ith the completion of our investigation comes the conclusion of handling your claim." The statement is evidence of Spinnaker's unreasonable investigation, and its intention to misrepresent the scope of the covered damage and the cost of covered repairs, as well as Spinnaker's unfair minimizing payment of Plaintiffs' claim, in a clear and intentional effort to delay payment of the true cost of covered repairs.

82.      On or about December 9, 2021, Spinnaker caused another estimate to be prepared by its claims representative, Mr. Danny Adams, and presented it to Plaintiffs and/or their public adjuster. This estimate still severely underestimated the scope and cost of necessary repairs and the reasonable and necessary amount to indemnify Plaintiffs.  The estimate is also evidence of Spinnaker's unreasonable investigation, the insufficiency of Spinnaker's prior estimate, Spinnaker's improper adjustment and unjustified delay in settling Plaintiffs' claim.

83.     By letter date December 22, 2021, Spinnaker through its adjuster, Alexis Wilkins, reported that Spinnaker "received and reviewed your public adjuster's request for additional funds to repair your dwelling" and that a check would be mailed to Plaintiffs.  Spinnaker's insufficient payment is evidence of its unreasonable investigation, knowing misrepresentation of the scope of the covered damage and the cost of covered repairs overtly and by omission, as well as unfair minimizing payment of Plaintiffs' claim, in a clear and intentional effort to delay payment of the true cost of covered repairs.

84.     Ms. Wilkins further reported that Spinnaker "obtained the services of an independent appraisal company, Pilot, to inspect this loss and provide a report of their findings for our use in resolving your claim."  Despite that Spinnaker was placed on notice of the reasonable and necessary amount to indemnify Plaintiffs for their covered claim, Spinnaker stated:

> [W]e are unable to provide coverage for the damages noted above because these types of damage are either not consistent with hail, or do not correlate to the reported date of loss. Furthermore, policy exclusions for damage caused by or resulting from surface water, repeat/long-term seepage of water, surface water, rust, wear, tear, deterioration, and improper construction or installation of building materials are specifically excluded from coverage by the provisions of the policy.

Such statement is a misrepresentation of the cause and scope of covered damage.  It is also a misrepresentation of the policy and the scope of coverage applicable to the damage.

85.     By letter dated March 28, 2022, Spinnaker, through its adjuster, Alexis Wilkins, improperly denied coverage for the loss.  By the letter, Spinnaker knowingly misrepresented the cause of the loss, the scope of the loss, the scope of the coverage, and the coverage applicable to the loss.

86.     To date, Spinnaker continues to delay payment of full indemnity for the damage to the Insured Property.  As such, Plaintiffs have not been paid in full for the damage to the Insured Property.

87.     Spinnaker failed to perform its contractual duties to adequately compensate Plaintiffs under the terms of the Policy.  Specifically, it refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by the Plaintiffs.  Spinnaker's conduct constitutes a breach of the insurance contract between Spinnaker and Plaintiffs.

88.     Spinnaker misrepresented to Plaintiffs that certain damage to the Insured Property was not covered under the Policy, even though the damage was caused by a covered occurrence. Spinnaker's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(1).

89.     Spinnaker failed to make an attempt to settle Plaintiffs' claim in a fair manner, although it was aware of its liability to Plaintiffs under the Policy. Spinnaker's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(2)(A).

90.     Spinnaker failed to explain to Plaintiffs the reasons for its offer of an inadequate settlement. Specifically, Spinnaker failed to offer Plaintiffs adequate compensation, without any or adequate explanation why full payment was not being made. Furthermore, Spinnaker did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did it provide any or adequate explanation for the failure to

adequately settle Plaintiffs' claim. Spinnaker's conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(3).

91.     Spinnaker failed to affirm or deny coverage of Plaintiffs' claim within a reasonable time.  Specifically, Plaintiffs did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Spinnaker.  Spinnaker's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(4).

92.     Spinnaker refused to fully compensate Plaintiffs, under the terms of the Policy, even though Spinnaker failed to conduct a reasonable investigation. Specifically, Spinnaker performed an outcome-oriented investigation of Plaintiffs' claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses on the Property. Spinnaker's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(7).

93.     Spinnaker failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiffs' claim, beginning an investigation of Plaintiffs' claim, and requesting all information reasonably necessary to investigate Plaintiffs' claim, within the statutorily mandated time of receiving notice of Plaintiffs' claim.  Spinnaker's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.055.

94.     Spinnaker failed to accept or deny Plaintiffs' full and entire claim within the statutorily mandated time of receiving all necessary information.  Spinnaker's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.056.

95.     Spinnaker failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay. Specifically, it has delayed full payment of Plaintiffs' claim longer than allowed and, to date, Plaintiffs have not received full payment for the claim.

Spinnaker's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

96.     From and after the time Plaintiffs' claim was presented to Spinnaker, the liability of Spinnaker to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Spinnaker has refused to pay Plaintiffs in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment. Spinnaker's conduct constitutes a breach of the common law duty of good faith and fair dealing.

97.     Spinnaker knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiffs.

98.     As a result of Spinnaker's wrongful acts and omissions, Plaintiffs were forced to retain the professional services of the attorney and law firm for representation with respect to these causes of action.

## COUNT I

## BREACH OF CONTRACT (Class Action)

99.     Plaintiffs restate and incorporate by reference all preceding allegations.

100.     Spinnaker entered into policies of insurance with Plaintiffs and members of the proposed class. These insurance policies govern the relationship between Spinnaker and Plaintiffs, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

101.     These policies of insurance are binding contracts under Texas law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

102.    Spinnaker drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss when Spinnaker calculates ACV under a RCLD methodology.

103.    In order to receive or be eligible to receive ACV claim payments in the first instance, Plaintiffs and the putative class members complied with all material provisions and performed all their respective duties with regard to their insurance policy.

104.    Spinnaker breached its contractual duties to pay Plaintiffs and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

105.    Spinnaker's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

106.    In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest for all periods of withholding as may be allowed by law.

## COUNT II
## BREACH OF CONTRACT (Individual Claim)

107.    Plaintiffs restate and incorporate by reference all preceding allegations.

108.    The Policy issued by Spinnaker is a binding contract supported by valid consideration.

109.    Unrelated to the discrete breach alleged in Count I, Spinnaker is in total, material breach of each of the Policy issued to Plaintiffs and is liable to Plaintiffs for the maximum allowed by the Policy for the direct physical loss and damage caused by the covered loss at issue, along with other loss, damage, and expense covered by the terms and conditions of the policies, less the deductible and payments previously made. Specifically, Spinnaker breached its contract by its

failure and refusal to fully and promptly pay the amounts owed to Plaintiffs as required by the terms of the Policy at issue. To date, Spinnaker has failed to make full payment to Plaintiffs.

110.    As a result of Spinnaker's breach of contract, Plaintiffs has sustained compensable losses, including loss and damage covered by the terms of Plaintiffs' Policy as well as consequential damages arising from the ongoing delay in payment. As a result of Spinnaker's breach of contract, Plaintiffs were prevented from timely completing the necessary repairs.

111.    Spinnaker is liable to Plaintiffs for Plaintiffs' losses for its breaches unrelated to the breach alleged in Count I.

**COUNT III**
**NONCOMPLIANCE WITH TEXAS INSURANCE CODE:**
**UNFAIR SETTLEMENT PRACTICES (Individual Claim)**

112.    Plaintiffs restate and incorporate by reference all preceding allegations.

113.    Unrelated to the discrete breach alleged in Count I, Spinnaker's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a).  All violations under this article are made actionable by TEX. INS. CODE §541.151.

114.    Spinnaker's unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

115.    Spinnaker's unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Spinnaker's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

116.   Spinnaker's unfair settlement practices, as described above, of failing to promptly provide the Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

117.   Spinnaker's unfair settlement practices, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

118.   Spinnaker's unfair settlement practices, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

119.   Each of the foregoing unfair settlement practices were completed knowingly by Spinnaker and were a producing cause of Plaintiffs' injuries and damages.

## COUNT IV
### NONCOMPLIANCE WITH TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS (Individual Claim)

120.   Plaintiffs restate and incorporate by reference all preceding allegations.

121.   Unrelated to the discrete breach alleged in Count I, the claim is a claim under an insurance policy with Spinnaker of which Plaintiff gave proper notice. Spinnaker is liable for the claim. Spinnaker's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims. All violations made under this article are made actionable by TEX. INS. CODE §542.060.

122.     Spinnaker's failure to acknowledge receipt of Plaintiffs' claim, commence investigation of the claim, and/or request from Plaintiffs all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

123.     Spinnaker's failure to notify Plaintiffs in writing of its acceptance or rejection of the claim within the applicable time constraints, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.056.

124.     Spinnaker's delay of the payment of Plaintiffs' claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.058.

125.     Each of the foregoing unfair settlement practices were completed knowingly by Spinnaker and were a producing cause of Plaintiffs' injuries and damages.

## COUNT V
## BREACH OF GOOD FAITH AND FAIR DEALING (Individual Claim)

126.     Plaintiffs restate and incorporate by reference all preceding allegations.

127.     Unrelated to the discrete breach alleged in Count I, Spinnaker breached the common law duty of good faith and fair dealing owed to Plaintiffs by denying or delaying payment on the claim when Spinnaker knew or should have known that liability was reasonably clear.

128.     Spinnaker failed, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' claim, although, at that time, Spinnaker knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear and constitutes a breach of the duty of good faith and fair dealing.

129.     Spinnaker's conduct proximately caused Plaintiffs' injuries and damages.

## COUNT VI
## DECLARATORY JUDGMENT AND RELIEF (Class Action)

130.    Plaintiffs restate and incorporate by reference all preceding allegations.

131.    This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

132.    A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

133.    Plaintiffs and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

134.    Plaintiffs seek, individually and on behalf of the proposed class, a declaration that the applicable insurance contracts prohibit the withholding of future labor costs as described herein when adjusting losses under the methodology employed herein.

135.    Plaintiffs further seek, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

136.    Plaintiffs and members of the proposed class have and will continue to suffer injuries.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1.      Enter an order certifying this action as a class action, appointing James Morrison and Dallas Morrison as the representatives of the class, and appointing Plaintiffs' attorneys as counsel for the class;

2.      Enter a declaratory judgment, declaring that Spinnaker's withholding of future labor costs as depreciation is contrary to and breaches the insurance policies issued to Plaintiffs and members of the putative class;

3.      Enter a declaration, and any preliminary and permanent injunction and equitable relief against Spinnaker and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4.      Enter an order that Spinnaker specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5.      Award compensatory damages for all sums withheld as non-material depreciation as defined above, plus prejudgment interest on all such sums, to Plaintiffs and members of the proposed class;

6.      Award compensatory damages, statutory benefits, treble damages, attorney's fees, exemplary and punitive damage to Plaintiffs, individually, for all amounts to which they are entitled, unrelated to the discrete breach alleged in Count I;

7.      Award attorneys' fees, costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class as may be allowed by law;

8.      Pre- and Post-Judgment interest; and

9.      Grant such further and additional relief as the Court deems necessary and proper.

Respectfully submitted,

/s Shaun W. Hodge _____
Shaun W. Hodge
Texas Bar No. 24052995
shodge@hodgefirm.com
The Hodge Law Firm, PLLC
The Historic Runge House
1301 Market Street
Galveston, Texas 77550
Telephone: (409) 762-5000
Facsimile: (409) 763-2300

***Attorney for Plaintiffs and
Proposed Class Representatives***